**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Scartelli Construction Services, Inc., | |
| Plaintiff, | No. 3:18-CV-1164 |
| v. | (Judge Caputo) |
| Chesapeake Building Components, Inc., | |
| Defendant. | |

**MEMORANDUM**

**I. Background.**

This case concerns disputes that have arisen in connection with the parties' association pursuant to a construction project at the North Pocono Library located in Moscow Borough, Lackawanna County, Pennsylvania. This case was originally filed in the Lackawanna County Court of Common Pleas but was removed to this Court by Chesapeake on diversity grounds. (Doc. 1).

We consider here two motions filed by Defendant Chesapeake Building Components, Inc. ("Chesapeake"). These motions are: (1) a Motion for More Definite Statement or, in the Alternative, to Dismiss (Doc. 17); and (2) a Motion to Change Venue (Doc. 21). These motions have been fully briefed by the parties and are now ripe for disposition.

**II. Chesapeake's Motion to Change Venue.**

Chesapeake's Motion to Change Venue seeks transfer to the District Court of Maryland pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides: "a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The motion is predicated on Chesapeake's assertion that the parties' contract included a forum selection clause that provided all disputes arising from the contract would be resolved in Maryland. Specifically, Chesapeake asserts that Paragraph 8 of the terms and conditions page of the contract states, in pertinent part:

> This agreement shall be exclusively governed by the laws of the State of Maryland. Customer/buyer acknowledges and agrees that the sale of goods has taken place in Maryland regardless of actual job location and any and all litigation of any kind shall solely be conducted in the state of Maryland.

Paragraph 8 seemingly indicates that the parties agreed to resolve all contractual disputes in Maryland. However, Plaintiff vehemently contends that the "terms and conditions" page (Doc. 1-3 at 16) relied upon by Chesapeake was never seen by or agreed to by any principal of Scartelli Construction Services, Inc. Thus, the pivotal question that the Court must resolve is whether the parties actually agreed to

litigate all disputes in Maryland. If so, precedent requires that transfer to Maryland is the only appropriate result.

A*tlantic Marine Construction Co., Inc. v. U.S. District Court for the Western District of Texas*, 571 U.S. 49, 134 S. Ct. 568 (2013) holds that a forum selection clause that directs litigation to a specific forum within the federal court system is properly enforced through the doctrine of forum non conveniens. The agreed upon intention of the parties as expressed through a forum selection clause is entitled to great weight. *Atlantic Marine*, supra, at 581. We must also bear in mind that, in the context of a § 1404(a) motion, "Congress has replaced the traditional remedy of outright dismissal with transfer." *Id.* (citing *to Sinochem International Co. v. Maylaysia International Shipping Corp*., 549 U.S. 422, 430; 127 S. Ct. 1184 (2007).

The ordinary forum non conveniens analysis involves an assessment of various private interests such as the convenience of the parties and witnesses. However, in determining the validity of a forum selection clause, Plaintiff's choice of forum and all private interest considerations become irrelevant and the Court may consider public-interest factors only. *Atlantic Marine*, supra, at 581-82. It has been held that a forum selection clause agreed to by parties in an arms-length negotiation is entitled to "controlling weight in all but the most exceptional cases." *Stewart Organization, Inc. v. Ricoh Corp*., 487 U.S. 22, 33 (108S.Ct. 223) (1988).

Of course, application of the aforementioned decisional law is entirely dependent upon a finding that the parties actually did agree to the forum selection clause Chesapeake relies upon here.

Chesapeake contends that what it construes as the contract is defined by Exhibit 3 to the Declaration of Edward Basham, III (Doc. 1-3). The version of the parties' contract in the Basham Declaration consists of three pages, two of which are identical price quotes by Chesapeake to provide a "roof system" for the project at a total cost $37,100. The third page (Doc. 1-3 at 16) is a compilation of terms and conditions that includes the previously referenced forum selection clause. Mr. Basham's sworn declaration states that he mailed "a complete, fully-executed copy of the Contract, including the Terms and Conditions on August 14, 2012." Doc. 11, ¶¶ 4-5). Significantly however, Chesapeake does not provide the Court with a telefax transmittal sheet or any other form of corroboration indicating that all three pages were sent to Scartelli on or before August 10, 2012, the date Scartelli's representative signed the contract.

To counter the Basham Declaration, Plaintiff presents two affidavits: the Declaration of Ralph Scartelli and the Declaration of John L. Ludwig.[1] (Docs. 30-1 and 30-2 respectively). Both Mr. Scartelli and Mr. Ludwig attest under oath that

---

[1] Ralph Scartelli served as president of Scartelli Construction Services, Inc. and John L. Ludwig functioned as its project manager/construction manager.

Scartelli Construction Services, Inc. "never received or was otherwise aware of the boilerplate text" that included the forum selection clause Chesapeake seeks to invoke here. Significantly, both Scartelli and Ludwig refer the Court to a photocopy of a telefax transmittal sheet generated by Chesapeake on August 13, 2012 (the date Edward Basham signed the contract as represented by Doc. 1-3) that plainly indicates that the fax transmission consisted of only one page. The affidavits of Scartelli and Ludwig, buttressed as they are by Chesapeake's own telefax transmittal sheet that seemingly indicates that the only page transmitted on the date in question did not include the forum selection clause, create a substantial question of fact as to whether the parties ever reached mutual agreement regarding where contract disputes could be lodged. Given this factual murkiness, this Court will not deviate from the norm by depriving Plaintiff of its choice of forum. See *Jumara* v. *State Farm Insurance Co.*, 55 F.3d 873, 880, (3d. Cir. 1995). Thus, Chesapeake's Motion for Change of Venue will be denied.[2]

### III. Chesapeake's Motion to Dismiss or, in the Alternative, for a More Definite Statement.

### A. Motion to Dismiss Standard.

---

[2] We note that Chesapeake has made no argument that traditional forum non conveniens considerations, such as the convenience of the parties, convenience of witnesses, or the interest of justice should require a change of venue in this case.

A party may move to dismiss a claim or claims set forth in a plaintiff's complaint under Rule 12 (b) (6) of the Federal Rules of Civil Procedure for "failure to state a claim under which relief can be granted." The purpose of a motion to dismiss is to test the legal sufficiency of the complaint. *Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir. 1987). The Defendant bears the burden of showing that no claim has been presented. See e.g*., Hedges v. United States*, 404 F. 3d 744, 750 (3d. Cir. 2005) (citation omitted).

The Third Circuit Court of Appeals has articulated the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions in *Bell Atlantic Corporation V. Twombly*, 550 U.S. 433 (2007), and *Ashcroft v. Iqbal*, 556 U. S. 662 (2009):

> "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.'" *Iqbal*, 126 S. Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id at 1950.

*McTernen v. City York*, 577 F.d 521, 530 (3d. Cir. 2009).

The Third Circuit discussed the effects of *Twombly and Iqbal* in detail and provided a roadmap for district courts presented with a motion to dismiss for

failure to state a claim in a case filed only one week before *McTernen*, *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d. Cir 2009). That case states:

> District Courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [*Iqbal*, 129 S. Ct. at 1949]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show the Plaintiff has a "plausible claim for relief." Id at 1950. In other words, a complaint must do more than allege a Plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See *Phillips v. County of Allegheny*, 515 F.3d 224, 234-35 (3d. Cir. 2008). As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged - - but it has not shown that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. At 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

*Fowler*, supra, at 210-11.

The Third Circuit's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the Court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Speciality Services, Inc.,* No. 09-1104, 2009 WL 3041992 at 2 3d. Cir. September 24, 2009) (not precedential) (quoting *Twombly)* 550 at U.S. at 555).

**B. Discussion.**

Chesapeake's motion is based upon the assertion that "the Amended Complaint sets forth mere conclusory allegations, without sufficient supporting facts." (Doc. 17 at 2). Chesapeake complains that the various documents that comprise Exhibits "A" through "H" of Plaintiff's Amended Complaint do not, even in the aggregate, clearly spell out the material terms of the contract. Chesapeake also contends that Plaintiff's Amended Complaint is defective in that it fails to specify the manner in which Chesapeake breached the parties' agreement. (Doc. 17 at 10).

The Court has reviewed the Amendment Complaint thoroughly and must disagree that it lacks the necessary specificity to survive a motion to dismiss. As Plaintiff points out in its brief (Doc. 23 at 14), Chesapeake has explicitly admitted that a contractual relationship existed between these parties. Chesapeake

acknowledged that it contracted to supply a "roof system" for the North Pocono Library Project at a cost of $37,100.00. (Doc. 1-3 at 15). Chesapeake describes this document as the parties' "complete fully-executed copy of the contract". (Doc. 22 at 3). ³It is also undisputed that roof trusses manufactured by Chesapeake were delivered to the construction site. Plaintiff's Amended Complaint describes the nature of the contract and includes various exhibits detailing the communication between the parties prior to the delivery of the goods. Thus, even had Chesapeake not acknowledged the existence of a contract between these parties, the parties' conduct demonstrates clearly that they mutually agreed to a joint undertaking of some sort. Still, it is equally undeniable that the specific terms of this contract with respect to price, time for delivery, and whether the goods delivered conformed to the Plaintiff's specifications are quite ambiguous.

In cases involving a sale of goods, such as the instant case, the Uniform Commercial Code ("UCC") applies. In *Standard Bent Glass Corp. v. Glassrobots Oy,* 333 F. 3d. 440 (3d Cir. 2003). Then Chief Judge Scirica observed:

> Because this dispute involves the sale of goods, the Uniform
>
> Commercial Code applies, specifically 13 Pa. C.S. section 2207

---

³ Because the parties agree that a contract existed, the promissory estoppel count of the Amended Complaint must be dismissed because promissory estoppel is not cognizable where the parties have a contract. *Carlson v. Arnot-Ogden Memorial Hospital*, 918 F.2d 411, 416 (3d Cir. 1990).

> (adopting UCC § 2-207). The UCC addresses "the sad fact that many … sales contracts are not fully bargained, not carefully drafted, and not understandingly signed by both parties." 1 James J. White & Robert S. Summers, *Uniform Commercial Code* § 1-3, at 6 (4th ed. 1995). In these cases, we apply UCC § 2-207 to ascertain the terms of an agreement. *Step-Saver Data Systems, Inc. v. Wyse Tech. & The Software Link*, 939 F.2d 91, 98 (3d Cir. 1991).

This case is typical of the problem that the drafters of UCC § 2-207 envisioned in that the parties here did not fully and carefully define their respective rights and responsibilities when entering the contract at issue. Nevertheless, under Pennsylvania Law contract formation depends on the manifestation of intent of the parties to be bound rather than the presence or absence of specific terms. *APACS Corp. v. Trans World Communications Inc*., 155 F.3d 659, 666-667 (3d Cir. 1998). It is equally well-settled that an agreement with open terms may constitute an enforceable contract. *Carlos R. Leffler, Inc. v. Hutter*, 696 A. 2d 157, 163 (Pa. Suter. 1997).

Because the parties here did not succeed in creating an unambiguous, integrated contract evidenced by a written document that clearly set forth their respective rights and responsibilities, it may be necessary to consider parol evidence

and credibility judgments will likely be required of the finders of fact. *Channel Homes Center v. Grossman,* 795 F.2d 291, 300 (3d Cir. 1986). Construing, as we must, the allegations of the Amended Complaint in the light most favorable to the Plaintiff, we find that the Amended Complaint spells out a "plausible" claim for relief as required by *Twombley and Iqbal*, supra. Thus, Plaintiff's motion to dismiss for failure to state a claim pursuant to Rule 12 (b) (6) of the Federal Rules of Civil Procedure must be denied.

Defendant has moved alternatively for a more definite statement pursuant to Rule 12 (e) of the Federal Rules of Civil Procedure. The Amended Complaint clearly states Plaintiff's contentions: (1) that Chesapeake did not provide trusses for the project in timely fashion (see Amended Complaint at ¶¶ 14-27 and Doc. 15-1, Exhibit "L"); (2) that the trusses supplied by Chesapeake were delivered by "conventional flat-bed truck, rather than one of its hydraulic crane trucks with auxiliary power units as advertised and customarily used to unload/place such trusses consistent with industry practice", thus causing Plaintiff additional time and labor cost (Amended Complaint at ¶ 28); and (3) that the roof truss system Defendant delivered did not conform to Defendant's shop drawings and, consequently, had to be reworked thus delaying the project by more than two months. (Amended Complaint ¶¶ 29-31). The level of specificity in the Amended

Complaint is more than adequate to enable Chesapeake to prepare its defense and, for that reason, its motion for a more definite statement will be denied.

An Order consistent with the preceding determinations will be filed contemporaneously.

By the Court:


 S/A. Richard Caputo  
 A. Richard Caputo  
 United States District Judge

Dated: January 23, 2019