**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SCARTELLI CONSTRUCTION SERVICES, INC, | : | Civil No. 3:18-CV-01164 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CHESAPEAKE BUILDING COMPONENTS, INC., | : | |
| | : | |
| Defendant. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

This is a breach of contract action between two construction companies

arising out of the construction of the North Pocono Public Library ("the library") in

Moscow, Pennsylvania.  Plaintiff Scartelli Construction Services, Inc. ("Scartelli"),

which served as the general contractor for the library project, has brought suit

against one of its subcontractors, Defendant Chesapeake Building Components,

Inc. ("Chesapeake"), regarding the furnishing of a prefabricated wood roof truss

system that was to be installed as part of the library project.  The case is presently

before the court on Chesapeake's motion for partial summary judgment.  For the

reasons that follow, the motion is granted in part and denied in part.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

On May 8, 2012, Scartelli signed an agreement to serve as the general contractor for the construction of the library.  (*See* Defendant's Exhibit G, Doc. 77-2, p. 27.)  The contract stated that Scartelli was to achieve substantial completion of the project within 300 days of the date of the contract.  (*Id.*, p. 28.)  Scartelli subsequently agreed to a subcontract with Chesapeake by which Chesapeake would supply a prefabricated wood roof truss system for the library.  (*See* Doc. 15, ¶ 18; Doc. 43, ¶ 18.)[2]  Chesapeake delivered the truss system on November 13, 2012.  (Doc. 15, ¶ 27; Doc. 43, ¶ 27.)

Scartelli alleges that the truss system that Chesapeake delivered "was defective, unfit and unsuitable for its purpose and not merchantable in that it did not conform, and was contrary to the Defendant's shop drawings."  (Doc. 15, ¶ 29.)  This defective truss system, Scartelli alleges, caused disruption and delay in the

---

[1] The parties' statements of material facts at the summary judgment stage are silent as to several background facts regarding the library project.  In order to aid the reader's understanding of the factual background of this case, the court will cite to portions of Scartelli's amended complaint (Doc. 14) and Chesapeake's answer to the amended complaint (Doc. 43) where applicable.

[2] Although the parties agree that they had a contract for the truss system, they disagree as to what document or documents memorialize the terms of that contract.  (*See* Doc. 15, ¶ 18; Doc. 43, ¶ 18.)  For present purposes, the court does not need to determine which party is correct, as the arguments raised in Chesapeake's instant motion for summary judgment do not require the court to review the specific language of the contract.

library project.  (*Id.* ¶¶ 30–31.)  Scartelli incurred substantial monetary loss in an attempt to mitigate the damage allegedly caused by Chesapeake.  (*Id.* ¶¶ 32–33.)

Scartelli brought suit against Chesapeake in the Lackawanna County Court of Common Pleas on May 11, 2018, bringing claims arising from the allegedly defective truss system that Chesapeake had delivered.  (*See* Doc. 1-4, pp. 4 –19.) Chesapeake removed the case to this court on June 7, 2018, invoking the court's diversity jurisdiction under 28 U.S.C. § 1332.  (*See* Doc. 1.)  The case was initially assigned to United States District Judge Richard P. Conaboy.

Immediately after removing the case to federal court, Chesapeake filed an omnibus motion seeking to either dismiss the case for failure to state a claim, have the case transferred to the United States District Court for the District of Maryland, or strike certain portions of the complaint and require a more definite statement as to other portions of the complaint.  (Doc. 2.)  Chesapeake's motion sought to strike the portions of the complaint that pertained to the Dickson City Building project, which was another construction project for which the parties had signed a contract that was not directly pertinent to the issues in this case.  (*Id.*)  The court granted Chesapeake's motion to the extent that it sought to strike the portions of the complaint pertaining to the Dickson City Building project and to the extent that it sought a more definite statement, but otherwise denied the motion as premature. (Doc. 14.)

3

Scartelli filed an amended complaint on August 30, 2018, raising claims for breach of contract, breach of an implied in fact contract, breach of warranties, and promissory estoppel.  (Doc. 15.)  Scartelli sought $11,521.36 in damages arising from its efforts to mitigate damages, as well as an additional $120,000 "in other direct and main office delay impact costs."  (*Id.* ¶ 44.)

Chesapeake filed a motion to dismiss or alternatively for a more definite statement on September 12, 2018.  (Doc. 17.)  Chesapeake additionally moved to transfer the case to the District of Maryland on September 26, 2018.  (Doc. 21.)  The case was reassigned to United States District Judge A. Richard Caputo on November 18, 2018, and Judge Caputo denied both motions on January 23, 2019.  (Docs. 39–40.)  Chesapeake then filed an answer to the amended complaint and a counterclaim against Scartelli on February 6, 2019.  (Doc. 43.)

Scartelli moved to strike portions of Chesapeake's answer and counterclaim on February 25, 2019, arguing that Chesapeake had improperly included allegations pertaining to the Dickson City Building project in contravention of Judge Conaboy's earlier ruling.  (Doc. 46.)  The court granted the motion on May 21, 2019, striking Paragraph 34 of the answer and Paragraphs 7–11 of the counterclaim.  (*see* Docs. 51–52.)  Chesapeake moved for partial reconsideration on June 4, 2019, arguing that Paragraph 34 of the answer should only be stricken in part because it only partially pertained to the Dickson City Building project.  (Doc.

55.)  The court granted the motion for reconsideration on July 22, 2019, ruling that only the portion of Paragraph 34 that followed "Denied" was stricken from the record.  (Doc. 57.)

The case was reassigned to the undersigned on March 18, 2020.  Following the close of fact discovery, Chesapeake filed the instant motion for partial summary judgment on January 5, 2021, along with a supporting brief and a statement of material facts.  (Docs. 75–77.)  Chesapeake's motion seeks summary judgment as to two issues: (1) Scartelli's claim that it is entitled to office overhead costs as part of its damages; and (2) Scartelli's breach of warranties claim.  (Doc. 76.)  Scartelli filed a brief in opposition to the motion and a response to the statement of material facts on January 25, 2021.  (Docs. 80–81.)  Chesapeake then filed a reply brief in support of the motion on February 12, 2021, and filed a request for oral argument on the motion on February 12, 2021.  (Docs. 88–89.)  With briefing on the motion complete, it is now ripe for the court's disposition.

## JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1332, which allows a district court to exercise subject matter jurisdiction where the parties are citizens of different states and the amount in controversy exceeds $75,000.

## STANDARD OF REVIEW

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "'A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case.'" *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

7

**DISCUSSION**

**A. Chesapeake Is Entitled to Summary Judgment as to Scartelli's Claim for Office Overhead Damages**

The court will first address Chesapeake's argument that it is entitled to summary judgment as to Scartelli's claim for office overhead damages.  Scartelli's office overhead damages claim is based on a calculation of damages performed by Scartelli's construction manager, John Ludwig ("Ludwig").  (*See* Doc. 77-1, pp. 2–4.)  Ludwig's calculation was premised on the idea that Scartelli's contract to build the library contained a 256-day substantial completion deadline, but that it actually took Scartelli 366 days to complete the project.  (*Id.* at 2.)  Chesapeake, according to Ludwig's calculation, was responsible for "110+" days of that delay.  (*Id.*)

After establishing those premises, Ludwig calculated the "delay impacts" that should be charged to Chesapeake.  (*Id.*)  Ludwig included in this calculation two categories of office overhead damages: "main office overheads for [the] delay period," and "'stay open' to resolve Chesapeake," a category that includes office overhead costs for two and a half years after completion of the library project. (*Id.*)

Ludwig provided additional explanation as to his calculation of Scartelli's damages during his deposition on September 23, 2020.  (*see* Doc. 77-1, p. 6.) Ludwig explained that the 256-day substantial completion date that he used for his

8

calculation was "the substantial completion date on the original schedule submitted and used on the North Pocono Library Project." (*Id.* at 8.)  When asked to clarify whether that 256-day substantial completion date was included in Scartelli's bid for the library project, Ludwig explained "No.  This was the first schedule.  When you get the contract, they ask you to provide a schedule for the job prior to starting or within the first 30 days." (*Id.*)  Ludwig then further explained that 256 days was "the intent in Scartelli's bid of how much direct overhead he had included in his bid." (*Id.*)

Turning to the method by which he calculated Scartelli's office overhead costs for the delay period, Ludwig stated that he calculated an overhead cost per calendar day of $643.50 and then multiplied that by "90 days allocated to Chesapeake" to arrive at a total of $57,915.  (*Id.* at 12–13.)  Ludwig stated that Chesapeake was responsible for that "unabsorbed overhead" because the overhead costs "ended up being noncompensated by anyplace else." (*Id.* at 13.)  When pressed, however, Ludwig acknowledged that Scartelli was able to continue performing small jobs during this period and that Scartelli did not have a contract for any other large jobs while it was performing the work on the library project. (*Id.* at 13–16.)

Finally, Ludwig was asked to explain how he had arrived at a calculation of damages for a period of two and a half years after completion of the library project.

Ludwig explained that "there was two and a half years between the time of completion of this job until [Scartelli] went dormant in January 2016.  And during that time, they spent time and overheads from the main office and attempted to straighten out this Chesapeake situation."  (*Id.* at 16.)  Chesapeake's counsel then asked Ludwig how he had arrived at a calculation of $30,000 of overhead costs per year, to which Ludwig responded, "I put the figure in there, and I felt it was a fair allocation of overheads towards this problem."  (*Id.*)  Ludwig acknowledged that he did not have any documentation to back up such a figure, stating "[t]his was my interpretation of what was fair.  That's it."  (*Id.* at 16–20.)

Under Pennsylvania law, a plaintiff can recover consequential damages for a seller's breach of contract if the consequential damages constitute a "loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise."  13 Pa.C.S. § 2715(b)(1).

Chesapeake argues that it is entitled to summary judgment as to Scartelli's claim for office overhead damages because such damages were not foreseeable.  (Doc. 76, pp. 12–15.)  Chesapeake notes that Scartelli has provided no evidence that it could have completed the library project within a 256-day timeline, and that Scartelli's contract for the library project actually specified a 300-day substantial completion deadline.  (Doc. 76, pp. 12–13.)  Chesapeake further argues that the

substantial completion date specified in the contract was extended due to multiple

change orders that did not arise from the truss system and that Chesapeake actually

met the revised substantial completion date of May 15, 2013.  (*Id.* at 13.)  Finally,

Chesapeake notes that any delay it allegedly caused did not prevent Scartelli from

performing any other work it was contracted to perform.  (*Id.* at 15.)

Scartelli argues that it is entitled to consequential damages because the other

change orders on the project did not pertain to "critical path work," and that it was

the delay in the truss system that caused critical path delay in completing the

library project.  (Doc. 80, p. 4.)  Scartelli further argues that without Chesapeake's

delay in delivering the truss system, the library project would have been completed

at least ninety days sooner and that this delay prevented Scartelli from pursuing

other bonded work projects.  (*Id.* at 5.)

The court will grant Chesapeake's motion for summary judgment as to

Scartelli's claim for office overhead damages because Scartelli has failed to

produce evidence to show that such damages were foreseeable.  A party opposing a

motion for summary judgment must "go beyond the pleadings and by [its] own

affidavits, or by the depositions, answers to interrogatories, and admissions on file,

designate specific facts showing that there is a genuine issue for trial."  *Celotex*,

477 U.S. at 324.  This requires the non-moving party to "show where in the record

there exists a genuine dispute over a material fact."  *Wharton v. Danberg*, 854 F.3d

234, 244 (3d Cir. 2017) (quoting *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007)).

Here, Scartelli has provided evidence to support its claims that the delay in delivering the truss system was the only "critical path" delay on the library project, that the other change order requests on the project were related to the truss system delay, and that the delayed delivery of the truss system delayed completion of the library project, *see* Doc. 81, ¶¶ 13, 24–25, but it has not provided any evidence to show that office overhead damages were a foreseeable result of that delay. *See* 13 Pa.C.S. § 2715(b)(1) (stating that seller must have reason to know of buyer's "general or particular requirements . . . at the time of contracting" in order to be held liable for consequential damages). Accordingly, the court will grant Chesapeake's motion for summary judgment to the extent that it seeks summary judgment as to Scartelli's claim for office overhead damages both before and after the completion of the library project.

### B. Genuine Issues of Material Fact Preclude Summary Judgment as to Scartelli's Breach of Warranty Claim

Chesapeake's remaining argument at the summary judgment stage is that it is entitled to summary judgment as to Scartelli's breach of warranty claim. Under Pennsylvania law, a seller of goods may be liable for breach of the implied

warranty of fitness for a particular purpose if the seller had reason to know at the time of contracting that: (1) the goods were required for a particular purpose; and (2) that the buyer was relying on the skill or judgment of the seller to select or furnish suitable goods for that purpose.  13 Pa.C.S. § 2315.  The seller cannot be held liable for such a claim, however, when the seller "provides goods strictly in accordance with the specifications of the buyer." *Lesnefsky v. Fischer & Porter Co., Inc.*, 527 F. Supp. 951, 957 (E.D. Pa. 1981) (citing *Royal Pioneer Paper Box Mfg. Co., Inc. v. De Jonge & Co.*, 115 A.2d 837, 839 (Pa. Super. Ct. 1955)).

In this case, Chesapeake argues that it is entitled to summary judgment as to the breach of warranty claim because it was required to comply with Scartelli's specifications in designing the truss system.  (Doc. 76, p. 17.)  Scartelli responds that the deposition testimony of David Hess ("Hess"), the structural engineer for the library project, creates a genuine issue of material fact as to this claim because it shows that Chesapeake was required to do more than simply comply with Scartelli's specifications in designing the truss system.  (Doc. 80, pp. 13–15.) Chesapeake argues in its reply brief that Scartelli should be estopped from making such an argument because Scartelli alleged in its amended complaint that Chesapeake was obligated to build a truss system that complied with Scartelli's specifications.  (Doc. 88, p. 14–15.)

The court agrees with Scartelli that genuine issues of material fact preclude the entry of summary judgment as to the breach of warranty claim.  In his deposition, Hess testified that although the truss system had to comply with Scartelli's specifications, those specifications did not dictate all design aspects of the truss system:

> Q.    So when the truss designer prepared the shop drawings, there was nothing that he could look to to determine how many trusses to include; is that correct?
>
> A:    Again, he has my general layout which is presented as a design concept.  But he's responsible for the actual layout of the trusses and the design of each individual truss.
>
> So first of all, this is a piggyback truss.  There's nothing in my drawings that indicates any of the trusses are piggyback trusses.  That's a decision that Chesapeake made or Trenco [Professional Engineers][3] made to comment on the job.  There's nothing on my drawings to compare this to.

(Hess Deposition, p. 72:5–18, Doc. 81-6, p. 18.)  There is, therefore, a genuine issue of material fact as to whether Scartelli was relying on Chesapeake's skill or judgment to furnish an appropriate truss system.

The court also rejects Chesapeake's estoppel argument, as the relevant allegations in Scartelli's amended complaint are consistent with Hess's deposition testimony that Chesapeake was required to conform to Scartelli's specifications,

---

[3] According to Scartelli, and not controverted by Chesapeake, Trenco Professional Engineers was working as an adjunct for Chesapeake in the design of the truss system.  (*See* Doc. 80, p. 13.)

14

but that those specifications did not dictate all design aspects of the truss system. (*See* Doc. 15, ¶ 10 (alleging that Scartelli and Chesapeake communicated in writing regarding Scartelli's specifications); ¶ 13 (alleging that Scartelli faxed a copy of the specifications to Chesapeake "to ensure that [Chesapeake] took pertinent Project specifications into consideration"); ¶ 20 (alleging that Chesapeake was contractually obligated to provide a truss system that complied with Scartelli's specifications); ¶ 21 (alleging that Chesapeake agreed to provide a truss system and drawings that complied with Scartelli's specifications).

Accordingly, because there are genuine issues of material fact as to whether Scartelli was relying on Chesapeake's skill and judgment in furnishing an appropriate truss system for the library project, the court will deny Chesapeake's motion for summary judgment to the extent that it seeks summary judgment as to Scartelli's breach of warranty claim.

## CONCLUSION

For the foregoing reasons, Chesapeake's partial motion for summary judgment is granted in part and denied in part.  An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: August 9, 2021